UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JODIE W., | |
| Plaintiff, | Case No. C20-5117-MLP |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.  INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred in discounting her testimony, certain medical opinions, and a lay statement. (Dkt. # 16 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.  BACKGROUND

Plaintiff was born in 1975, has an 11th-grade education and a GED, and has worked as a bartender, childcare provider, hotel housekeeper, and waitress. AR at 68, 259. Plaintiff was last gainfully employed in May 2015. *Id.* at 259.

In November 2015, Plaintiff applied for benefits, alleging disability as of May 8, 2015. AR at 222-27. Plaintiff's application was denied initially and on reconsideration, and Plaintiff

ORDER - 1

requested a hearing. *Id.* at 124-32, 136-45. After the ALJ conducted a hearing in November 2018 (*id.* at 38-103), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 17-32.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the application date.

Step two: Plaintiff has the following severe impairments: lumbar spine degenerative disc disease, left knee internal derangement, major depressive disorder, and post-traumatic stress disorder.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform light work with additional limitations: she can stand/walk for 30 minutes at a time and four hours total in an eight-hour workday. She can sit for two hours at a time and six hours total in an eight-hour workday. She can occasionally forward bend, stoop, and kneel. She can less than occasionally squat and crawl. She can work in an environment that is not a dangerous industrial setting. She can work in an environment that does not involve working at unprotective heights or commercial driving. She can understand, remember, and apply new, simple and detailed instructions. She can perform work that has a somewhat predictable work routine and does not involve unusual work stressors. She can perform work that does not involve frequent, significant changes in the work routine or environment. She can have routine, perfunctory social interaction with supervisors, co-workers, and the public.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 17-32.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV. DISCUSSION

**A.   The ALJ Did Not Err in Discounting Plaintiff's Subjective Testimony**

The ALJ summarized Plaintiff's subjective allegations and explained that he discounted them because: (1) the objective medical evidence did not corroborate her allegations of disabling physical limitations and the record instead contains many normal findings or mild findings that required only routine, conservative treatment; (2) the treatment record shows that Plaintiff's

mental symptoms were effectively managed with medications and therapy, and that any persisting limitations are not disabling; (3) the record contains evidence of Plaintiff exaggerating her symptoms in order to obtain benefits, by reporting symptoms to DSHS examiners that she did not report to treating providers; (4) Plaintiff made inconsistent statements regarding why she stopped working; (5) the record contains evidence of Plaintiff's drug-seeking behavior; and (6) Plaintiff's activities are inconsistent with her allegations of needing to lie down throughout the day, needing to rely on her significant other to handle household chores, and being unable to walk unaccompanied. AR at 22-28.

In the Ninth Circuit, an ALJ must provide clear and convincing reasons to discount a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). Plaintiff challenges most of the ALJ's reasons, and the Court will consider her arguments in turn.

    1.    *Activities*

First, Plaintiff argues that her daily activities were consistent with the mental limitations outlined in the DSHS psychological opinions, and thus the ALJ erred in finding an inconsistency between Plaintiff's allegations and her activities. (Dkt. # 16 at 15.) But the ALJ identified inconsistencies between Plaintiff's *physical* allegations and her activities: the ALJ noted that Plaintiff testified that she needed to lie down and rest and ice her back throughout the day, and therefore, relied on her significant other to complete household chores, and could not walk unaccompanied due to a fear of falling. *See* AR at 51-53. The ALJ contrasted that testimony with Plaintiff's report that she was able to complete her daily activities independently, manage her self-care, cook simple meals, perform household chores, and shop. *Id*. at 28 (citing *id*. at 240-42, 378, 488, 772). The ALJ reasonably found these activities to be inconsistent with Plaintiff's testimony that her pain required her to lay down to rest and ice throughout the day.

The ALJ also noted that Plaintiff's gait was consistently normal and there were no references to walking difficulties in the record. AR at 28 (citing *id*. at 496, 500, 504, 682). The ALJ reasonably found this evidence to be inconsistent with Plaintiff's alleged inability to walk unaccompanied.

Because the ALJ pointed to specific activities that were inconsistent with Plaintiff's alleged physical limitations, Plaintiff has not shown error in the ALJ's reasoning. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine a claimant's allegations where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills"). Whether Plaintiff's activities were "representative of the rigors of the work world" (dkt. # 16 at 15) is irrelevant to the ALJ's identification of inconsistencies between her allegations and her activities.

2.     *Why Plaintiff Stopped Working*

The ALJ discounted Plaintiff's allegation of disability because she gave varying explanations for why she stopped working, some of which were unrelated to her impairments. *See* Social Security Ruling 82-61, 1982 WL 31387, at *1 (Jan. 1, 1982) ("A basic program principle is that a claimant's impairment must be the primary reason for his or her inability to engage in substantial gainful work."). Specifically, the ALJ noted that Plaintiff told her therapist in May 2015 (the month that she contends she became disabled) that she left her job and home to escape from her husband's verbal and sexual abuse. *See* AR at 336. Plaintiff contends, without further explanation or citation to authority, that these circumstances constitute "reasons of disability for leaving her former work." (Dkt. # 16 at 16.) Plaintiff has not explained how her need to leave her husband is related to an impairment, and thus has not shown that the ALJ erred in relying on this reasoning, along with other reasons, to discount her testimony.

ORDER - 5

3. *Drug-seeking Behavior*

The ALJ found that the record contained evidence that Plaintiff engaged in drug-seeking behavior, citing notes suggesting that Plaintiff specifically requested a prescription for benzodiazepines and/or narcotics. AR at 28 (citing *id*. at 675, 693-94, 696, 700-702). Plaintiff argues that most of the notes only indicate her providers' refusal to prescribe narcotics, but do not document her requests for the medications. (Dkt. # 16 at 16.) That one provider repeatedly documented her refusal to provide narcotics reasonably suggests that Plaintiff requested them, however, particularly because the refusals post-date Plaintiff's initial request. *See* AR at 694, 696, 700-702. The ALJ's interpretation of this evidence is reasonable and the ALJ did not err in relying on it to discount Plaintiff's testimony. *See Massey v. Comm'r of Social Sec. Admin.*, 400 Fed.App'x. 192, 194 (9th Cir. Oct. 19, 2010) (ALJ's interpretation of record that claimant engaged in drug-seeking behavior is a clear and convincing reason for disregarding his testimony).

4. *Exaggeration/Secondary Gain*

The ALJ found that Plaintiff reported more symptoms (hallucinations, suicidal ideation, panic attacks) when she was evaluated by DSHS examiners than she reported to treating providers, and found that this exaggeration constituted evidence of a secondary gain motivation. AR at 27-28, 378, 488, 772.

Plaintiff contends that the DSHS examiners did not find any evidence of malingering or secondary gain motivation, and thus the ALJ erred in relying on their opinions as evidence of secondary gain. (Dkt. # 16 at 17.) Plaintiff misses the ALJ's point: the ALJ noted that Plaintiff reported symptoms during evaluations related to benefits eligibility that she did not report elsewhere. AR at 27-28. The DSHS examiners did not have access to Plaintiff's treatment

records, and thus were not aware of this discrepancy and therefore could not have commented on it. Regardless of whether Plaintiff's exaggeration of symptoms to DSHS examiners unequivocally demonstrates a secondary gain motivation, this type of inconsistency is itself a convincing reason to discount a claimant's testimony. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ may consider a claimant's inconsistent or non-existent reporting of symptoms). Thus, the Court finds that this line of reasoning reasonably supports the ALJ's assessment of Plaintiff's testimony.

          5.    *Improvement with Treatment*

The ALJ found that Plaintiff's mental health symptoms were "effectively managed with medications and therapy[,]" but that she did experience symptom flares due to situational stressors such as family conflicts and housing instability. AR at 27. The ALJ did include RFC limitations to address Plaintiff's stress tolerance and social deficits. *Id*.

Plaintiff disputes that her symptoms improved, citing treatment notes from the beginning and end of her treatment with Elaine Pichette, ARNP, in her opening brief. (Dkt. # 16 at 17-18 (citing AR at 336, 469).) As noted by the Commissioner and admitted by Plaintiff on reply, Plaintiff's opening brief mischaracterizes the record and cites a 2013 note as the "last visit of record," when in fact Plaintiff continued to see Ms. Pichette until at least April 2016. *See* AR at 433-35. In April 2016 (the last treatment note with Ms. Pichette), Plaintiff reported to Ms. Pichette that she was doing well but needed medication refills, and Ms. Pichette rated Plaintiff's Global Assessment of Functioning score as 65-70, which indicates that she had some symptoms but was "generally functioning pretty well[.]" *See* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). This note would suggest that Plaintiff's condition did improve when she was getting treatment, as the ALJ found. That a DSHS examiner described Plaintiff as

experiencing not much improvement after six years of treatment with Ms. Pichette (AR at 490) does not undermine the ALJ's decision because the examiner did not have access to Ms. Pichette's treatment notes and Plaintiff herself reported to providers that her symptoms improved while she was seeing Ms. Pichette. *See id*. at 631.

Ms. Pichette subsequently died, and Plaintiff did not reengage with treatment until October 2017. *See* AR at 626. Plaintiff's treatment notes from October 2017 through June 2018 are not inconsistent with the ALJ's characterization, either. *See id*. at 644-74. At the beginning of this treating relationship, Plaintiff had not been receiving treatment for some time, but reported that she had "successfully worked with [Ms. Pichette] for 6 years. She reports that counseling and adjunctive medication helped to relieve her symptoms." *Id*. at 631. By the time of the most recent therapy notes, Plaintiff's appearance, affect, and thought content were described as "appropriate" and the therapist found Plaintiff to be "engaged, participates and is receptive to [] feedback." *Id*. at 645. At the penultimate therapy session in the record, Plaintiff report that she was "feeling alright." *Id*. at 647. Thus, Plaintiff has failed to show that the ALJ erred in finding that Plaintiff's symptoms improved when she was engaged with treatment.

Because Plaintiff has failed to show that any of the ALJ's reasons to discount her testimony are erroneous, the Court rejects this assignment of error.

B.   **The ALJ Did Not Err in Discounting Plaintiff's Fiancé's Statement**

Plaintiff's fiancé, Jermaine King, wrote a statement in September 2018 describing Plaintiff's physical and mental symptoms and limitations. AR at 314-15. The ALJ summarized Mr. King's statement and explained that he discounted it because Mr. King described physical symptoms were not consistent with the objective medical record, and because the record also showed that Plaintiff's mental symptoms improved with treatment. *Id*. at 30-31. The ALJ also

ORDER - 8

noted that although Mr. King wrote that he is essentially her caregiver and she cannot even take showers independently (*id.* at 314), the record shows that Plaintiff reported an ability to complete basic activities of daily living. *Id.* at 31.

An ALJ's reasons to discount a lay statement must be germane. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."). Plaintiff argues that the ALJ's reasoning was not germane, although she provides no challenge to the ALJ's reasoning (and in fact completely omits this line of reasoning from her quotation of the ALJ's decision) with respect to her physical symptoms. (*See* Dkt. # 16 at 13.) That line of reasoning is germane and constitutes a valid reason to discount Mr. King's statement. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

The challenged reasons are also germane. As explained *supra*, with respect to Plaintiff's testimony, the ALJ reasonably found that Plaintiff's mental symptoms improved with treatment and that Plaintiff's activity level was less restricted than Mr. King described. These are valid reasons to discount Plaintiff's testimony as well as Mr. King's statement. *See Lewis*, 236 F.3d at 511; *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (inconsistency between a lay statement and evidence of a claimant's activities is a germane reason to discount a lay statement).

Accordingly, the Court finds no error in the ALJ's discounting of Mr. King's statement.

### C.     The ALJ Did Not Err in Discounting the DSHS Opinions

Because Plaintiff applied for disability before March 27, 2017, the regulations set forth in 20 C.F.R. § 416.927 apply to the ALJ's consideration of medical opinions. Where not contradicted

by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Plaintiff underwent DSHS examinations in October 2015 (performed by Tasmyn Bowes, Psy.D.); September 2017 (performed by Terilee Wingate, Ph.D.); and October 2018 (performed by Dr. Wingate). AR at 376-89, 487-94, 771-79. Dr. Bowes's opinion was also reviewed by a DSHS non-examining provider, Steven Johansen, Ph.D., to determine Plaintiff's eligibility for benefits. *Id*. at 475-81.

The ALJ referenced two of the same reasons to discount all of these opinions: the ALJ found that the opinions were undermined because Plaintiff reported symptoms to the DSHS examiners that she did not report to her providers, and her treatment notes showed improvement with treatment. AR at 29-30. As discussed above, the Court finds that these reasons undermined the reliability of Plaintiff's self-reporting, and equally undermine the reliability of the DSHS opinions, which relied on Plaintiff's self-reporting. These reasons are legally sufficient to support the ALJ's assessment of the medical opinions.[3] *See, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (affirming an ALJ's discounting of a physician's opinion where the opinion was

---

[3] Plaintiff argues that the DSHS opinions are uncontroverted because the ALJ rejected contrary State agency opinions, and thus the ALJ's reasons to discount the DSHS opinions must be clear and convincing. (Dkt. # 16 at 6.) That the ALJ rejected a contrary opinion does not mean that the opinion ceases to exist in the record, and thus the ALJ's rejection does not eliminate the conflict between the opinions. Moreover, even if the DSHS opinions were considered uncontradicted, the ALJ's reasons are clear and convincing and therefore sufficient.

1   based on the claimant's inaccurate self-report); *Thomas*, 278 F.3d at 957 (ALJ may consider

2   improvement with treatment in discounting physician's opinion).

3         Because the ALJ provided legally sufficient reasons to discount the DSHS opinions, the

4   Court affirms the ALJ's assessment of these opinions.

## V.    CONCLUSION

      For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

      Dated this ___ day of March, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge